NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IDELLA MITCHELL, : | |
| : | Civil Action No. 10-1061 (SRC) |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | |
| MARLENE WALTERS, NEVILLE : | |
| WALTERS, and PIAZZA & : | |
| ASSOCIATES, INC., : | |
| : | |
| Defendants. : | |

**CHESLER**, District Judge

      This matter comes before the Court upon Defendants' motion to dismiss Plaintiff's

Amended Complaints pursuant to Federal Rule of Civil Procedure 12(b)(6) [docket entry 15].

Plaintiff has brought a motion for summary judgment pursuant to Federal Rule of Civil

Procedure 56 [docket entry 14], which the Court also considers in this Opinion.  The motions

have been fully briefed, and the Court will rule based on the papers submitted and without oral

argument, pursuant to Federal Rule of Civil Procedure 78.  For the reasons discussed below, the

Court will grant Defendants' motion to dismiss.  It will also dismiss Plaintiff's motion for

summary judgment as moot.

I. **BACKGROUND**

*Pro se* Plaintiff Idella Mitchell ("Plaintiff" or "Mitchell") initiated the claims at issue in this consolidated action as three lawsuits filed separately against each of the three Defendants in the Superior Court of New Jersey.  The actions were removed to this Court and thereafter consolidated.  They are all based on the same factual nexus.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

Mitchell is a tenant in an apartment complex located at 2114 Wyndhurst Drive in Plainsboro, New Jersey.  (The Court will hereinafter refer to the apartment complex as the "Wyndhurst.").  Defendant Piazza & Associates, Inc. ("Piazza") is the property manager of the Wyndhurst and provides it with staffing services.  Defendants Marlene Walters and Neville Walters are employees of Piazza who work at the Wyndhurst.  Though Mitchell has pled myriad claims, this action at its core involves allegations of housing discrimination against Mitchell based on her race and physical disability.  The following narrative is based on Plaintiff's allegations, unless otherwise noted.

Beginning on or about November 17, 1999 and at all relevant times, Mitchell has occupied a two-bedroom 600 square foot handicapped accessible unit.  She receives assistance with her rent payment through vouchers provided by the federal Department of Housing and Urban Development ("HUD"), a housing subsidy program commonly known as "Section 8." Plaintiff alleges that on or about September 30, 2009, Marlene Walters informed her that she must vacate the Wyndhurst or move to a one-bedroom non-handicapped accessible apartment at the Wyndhurst on or before November 1, 2009, prior to the November 16, 2009 expiration of her lease.  (The Court notes that the November 1 date appears to correspond to the renewal date for

HUD vouchers as administered by the Middlesex County Public Housing Agency.)  She further alleges that Piazza demanded a security deposit for the new unit in the amount of 1.5 times the monthly rent, which Plaintiff maintains she cannot afford, and refused to apply the security deposit in place for the two-bedroom unit she was occupying towards the new unit.  Although it is not alleged in any of the Amended Complaints, Mitchell states in her summary judgment papers that when she first occupied the two-bedroom unit in 1999, she lived there with her four-year-old grandson.  The Court takes judicial notice of this fact because the lease agreement - which the Court properly considers as an extraneous document on which Plaintiff bases her claims - bears this out.  Indeed, the November 17, 1999 lease agreement entered into by Mitchell, as tenant, and Plainsboro Housing Partners, L.P., as Owner of the Wyndhurst, states that the apartment will be occupied by Mitchell and "William J. Keys."  (Somerset Cert., Ex. G, ¶ 3.)  The lease agreement further provides that

> You will not permit unauthorized adults or children to live at the apartment.  The Resident(s) understand that if the number of household members should increase or decrease so that household size is in conflict with the standards set up for this apartment complex, the household will be required to move to the appropriate size unit within 30 days of a unit being available or will be required to move from the apartment complex. If there is no appropriate size unit at the complex, Resident(s) will be required to move at the end of the current lease.

(*Id.*)  The letter from Marlene Walters advising Plaintiff that the lease agreement pertaining to the two-bedroom unit would not be renewed cited paragraph 3 of the lease and explained that her

household no longer met the minimum occupancy of two people for a two-bedroom apartment, per the standards set for affordable housing.  (M. Walters Cert., Ex. B.)[1]   The Court also takes judicial notice of the fact that Plaintiff admits that her grandson has since moved out of the apartment to live with his mother in Texas.

Mitchell, who is African-American, claims that the move demanded by Piazza was motivated by racial discrimination. She also alleges that Defendants have failed to accommodate her physical disabilities, which consist of diabetes and arthritis in her knees.  Additionally, Plaintiff complains of housing discrimination in the form of Defendants' failure to repair the worn carpeting in her apartment, despite recommendations by the HUD Housing Inspector that it should be fixed because it poses a tripping hazard.

## II.   DISCUSSION

### A.   Standard of Review

The Supreme Court has held that a complaint filed by a *pro se* plaintiff must be construed liberally and to a less stringent standard than those pleadings filed by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (following *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)); *see also United States v. Day*, 969 F.2d 39, 42

---

[1] Although submitted to the Court in connection with Defendants' opposition to Plaintiff's motion for summary judgment, the letter advising Mitchell of the non-renewal of her lease agreement is properly considered by the Court as a document expressly referenced in and relied upon by the Amended Complaints.

4

 (3d Cir.1992).  A *pro se* litigant's complaint is, nevertheless, subject to the same pleading requirements set by Federal Rule of Civil Procedure 8(a) as other complaints filed in federal court.  *Erickson*, 551 U.S. at 93-94.

Federal Rule of Civil Procedure 8(a) requires that to state a claim for relief, a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  When evaluating the sufficiency of claims subject to the pleading requirements of Rule 8(a), the Court must apply the plausibility standard articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).  In *Twombly* and *Iqbal*, the Supreme Court stressed that a complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556.)  The cases are also clear about what will not suffice: "threadbare recitals of the elements of a cause of action," an "unadorned, the-defendant-unlawfully-harmed-me accusation" and conclusory statements "devoid of factual enhancement." *Id.* at 1949-50; *Twombly*, 550 U.S. at 555-57.  While the complaint need not demonstrate that a defendant is *probably* liable for the wrongdoing, allegations that give rise to the mere *possibility* of unlawful conduct will not do.  *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 557. The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S.

5

232, 236 (1974)).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a

court may consider only the allegations of the complaint, documents attached or specifically

referenced in the complaint if the claims are based upon those documents and matters of public

record.  *Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007); *Sentinel Trust Co. v.*

*Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003).

### B.      Analysis

_____Defendants have moved to dismiss the entirety of Plaintiff's Amended Complaints for

failure to state a claim upon which relief may be granted.  The three Amended Complaints at

issue are largely duplicative of each other.  Based on the facts outlined above, Mitchell asserts six

claims against all three Defendants, which the Amended Complaints identify as follows: (1)

racial discrimination; (2) violation of the Americans with Disabilities Act; (3) breach of lease

contract; (4) nepotism; (5) abuse of authority; and (6) violation of civil rights under Title VIII

(Fair Housing Act claim).  She also asserts claims of fraud and violation of the Deceptive Trade

Practices Act against Defendant Piazza only.   The Court will consider each claim in turn.

### 1.      Racial Discrimination

Defendants maintain that the claim for racial discrimination should be dismissed as

preempted because it is based on the same facts that form the basis of Plaintiff's Fair Housing

Act claim.  Indeed, the claim for "racial discrimination" does not invoke any particular common

law or statutory theory of recovery and factually is based on allegations that Defendants forced

Plaintiff to move to a different apartment and/or refused to perform necessary repairs on the unit

she occupied as of the filing of this action.  Reading the Amended Complaints liberally, the

Court must construe Plaintiff's claim for relief for having suffered racial discrimination in housing essentially to invoke her private right of action under the Fair Housing Act.  *See* 42 U.S.C. § 3613.  As Defendants indicate, the Amended Complaints already plead for relief expressly under the Fair Housing Act.  While the Court will not employ the term of art "preempted," it does hold that Mitchell's claim for racial discrimination in housing is duplicative of her Fair Housing Act claim.  Whether the Fair Housing Act claim, asserted as Count Six in the three Amended Complaints, may withstand the motion to dismiss will be discussed below.

Accordingly, the "racial discrimination" claim asserted in Count One of each Amended Complaint under review will be dismissed as duplicative.

2.   <u>Americans With Disabilities Act</u>

Each Amended Complaint asserts in a conclusory manner that Defendants have violated Mitchell's rights under the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA").  Though Plaintiff does not specify which portions of the ADA have been violated, the facts alleged make Titles I and IV, prohibiting discrimination in employment and in the provision of telecommunications services, respectively, wholly inapplicable.  The Court construes the Amended Complaints to assert claims under Title II and III of the ADA and will proceed to evaluate the legal sufficiency of each as pled.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a *public entity* or be subject to discrimination *by any such entity*.  42 U.S.C. § 12132.  As Defendants argue, they are not "public entities" as defined by the

statute.  *See* 42 U.S.C. § 12131(1).  The Court thus concludes that Plaintiff has failed to state a cognizable claim under Title II of the ADA.

Title III prohibits discrimination by "any person who owns, leases (or leases to) or operates a place of public accommodation."  42 U.S.C. § 12182.  The statute enumerates 12 categories of establishments which are considered places of public accommodation.  They are:

> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor; (B) a restaurant, bar, or other establishment serving food or drink; (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment; (D) an auditorium, convention center, lecture hall, or other place of public gathering; (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment; (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment; (G) a terminal, depot, or other station used for specified public transportation; (H) a museum, library, gallery, or other place of public display or collection; (I) a park, zoo, amusement park, or other place of recreation; (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education; (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7).

A  residential apartment complex, such as the Wyndhurst where Plaintiff claims Defendants failed to accommodate her disabilities, does not fall into any of those groups.  The category which most resembles the Wyndhurst is the "inn, hotel, motel, or other place of lodging" group.  Even construing this category liberally, the Court discerns no facts in the Amended Complaint which would even remotely support the characterization of Plaintiff's

apartment complex as a place of lodging or other transient housing falling with the purview of the ADA.  *See Regents of Mercersburg College v. Republic Franklin Ins. Co.*, 458 F.3d 159, 165 n. 8 (3d Cir. 2006) (taking note, in *dicta*, that residential facilities such as apartments and condominiums are not transient lodging and, therefore, not subject to the ADA). After carefully considering the ADA, the Northern District of California concluded that the residential portions of the defendant facility were not subject to the ADA's requirements because  "apartments and condominiums do not constitute public accommodations within the meaning of the [ADA]." *Indep. Housing Svcs. of San Francisco v. Fillmore Ctr. Assocs.*, 840 F.Supp. 1328, 1344 (N.D.Cal. 1993).  It reached this conclusion by looking to the statute's legislative history, which "clarifies that 'other place of lodging' [section 12181(7)(A)] does not include residential facilities."  *Id.* at 1344 n.14.  The Third Circuit has commented that it agrees with the conclusion reached by the court in *Independent Housing Services of San Francisco.  Regents of Mercersburg College*, 458 F.3d at 165 n. 8.  The Wyndhurst's receipt of federal funds in partial payment of Plaintiff's rent through vouchers issued by HUD does not transform the apartment complex into a place of public accommodation.  *See Reyes v. Fairfield Props.*, 661 F.Supp.2d 249, 264 n.5 (E.D.N.Y. 2009) (concluding that any ADA claim plaintiff might have pled would be insufficient as matter of law, noting that property management defendants did not own or operate a place of public accommodation simply because property accepted tenants receiving federal housing subsidies).  "Receipt of Section 8 housing vouchers is an insufficient basis upon which to deem the premises-a private, residential apartment complex-a place of public accommodation."  *Id.*

Thus, whether the Amended Complaints intended to pled a claim under Title II or Title III of the ADA, or both, they have failed to allege facts that plausibly support the elements of these claims.  Accordingly, the claims will be dismissed.

3.    Breach of Lease Contract

Plaintiff avers that Defendants are liable for breach of contract in that they demanded she vacate the two-bedroom unit before expiration of the lease, failed to renew her lease agreement and failed to maintain the unit adequately.  These claims must fail.  It is axiomatic that "an action on a contract cannot be maintained against a person who is not a party to it."  *Comly v. First Camden Nat'l Bank & Trust Co.,* 22 N.J. Misc. 123, 127 (Sup.Ct.1944).  Plaintiff's claims for breach of contract are premised on the lease agreement, but that agreement states that it is "between Wyndhurst at Plainsboro L.P., Owner, and Idella Mitchell, Resident."  (Somerset Cert., Ex. G.)  None of the Defendants named in this suit are signatories to the contract.  Nor has Plaintiff alleged facts that could possibly support binding these Defendants to the lease agreement's rights and obligations based on a theory of agency or third-party beneficiary status.  *See, e.g., Hojnowski v. Vans Skate Park*, 375 N.J. Super. 568, 576 (App.Div. 2005), *aff'd by* 187 N.J. 323 (2006) (holding that under New Jersey law, a non-signatory to a contract may be bound by its terms if non-party is agent of a party or third-party beneficiary to the contract).  The breach of contact claims asserted by Plaintiff in the Amended Complaints will thus be dismissed with prejudice.

4.    Nepotism

In Count Four of each Amended Complaint, Mitchell alleges that Defendants engaged in nepotism, based on the sister and brother relationship between Defendants Marlene Walters and

Neville Walters, who are respectively the manager and head of maintenance employed by Piazza at the Wyndhurst property.  She claims that such nepotism resulted in a "hostile living environment."  (Am. Compl. at 1.)  Apart from the wholly conclusory use of the word "nepotism" to describe Piazza's employment of two related persons, Plaintiff fails to articulate any cognizable legal theory under which she could potentially recover for such alleged misconduct.  This claim will be dismissed with prejudice.

5.    Abuse of Authority

The Court is frankly at a loss to construe Plaintiff's "abuse of authority" assertion as any claim cognizable in the law.  It is listed as one of the counts in the preamble of each Amended Complaint and later developed no further.  Count Five for abuse of authority will be dismissed with prejudice.

6.    Violation of the Fair Housing Act

Count Six claims that Defendants violated the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. §§ 3601, *et seq.*  The Fair Housing Act prohibits housing discrimination based on "race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).  It also prohibits housing discrimination based on the handicap of a buyer or renter.  42 U.S.C. § 3604(f).  In relevant part, prohibited practices under the Fair Housing Act include refusing to rent a dwelling and discrimination in the terms, conditions or privileges of rental or in the provision of services associated with rental.  42 U.S.C. § 3604(b) and (f). The statute also makes it unlawful, in the case of disabled persons, to refuse "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be

11

necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The Fair Housing Act confers a private right of action on one aggrieved by an occurrence of housing discrimination. 42 U.S.C. § 3613(a). Although it also provides an alternate avenue of administrative enforcement by filing a complaint with the Secretary of HUD, 42 U.S.C. § 3610, the Fair Housing Act does not require that an aggrieved person exhaust his or her administrative remedies before filing a civil action, nor does it require that Plaintiff select one avenue to the exclusion of the other. 42 U.S.C. § 3613(a)(2) ("An aggrieved person may commence a civil action under this subsection whether or not a complaint has been filed under section 3610(a) of this title and without regard to the status of any such complaint"). The Third Circuit has interpreted the remedial schemes of the statutes as follows: "As we read the statute, the plain language of sections 3610 and 3613 state that a dual enforcement scheme exists that allows an aggrieved party to pursue both private and administrative enforcement until such time as either avenue has achieved resolution of the claim." *Mitchell v. Cellone*, 389 F.3d 86, 90 (3d Cir. 2004).[2]

---

[2] In this regard, the Court notes that Plaintiff permissibly sought to avail herself of both enforcement schemes simultaneously. Though the housing discrimination complaint Mitchell filed with HUD is not referenced in the Amended Complaints, the Court takes judicial notice of the administrative procedures pursued by Mitchell and of HUD's dismissal of her complaint based on a determination of no reasonable cause to believe that discrimination occurred. This determination does not preclude Plaintiff's civil action. *Cf.* 42 U.S.C. § 3613(a)(3) ("An aggrieved person may not commence a civil action under this subsection with respect to an alleged discriminatory housing practice which forms the basis of a charge issued by the Secretary if an administrative law judge has commenced a hearing on the record under this subchapter with respect to such charge.").

A plaintiff can establish a *prima facie* claim of housing discrimination under the Fair Housing Act by showing that the challenged actions were motivated by intentional discrimination or that the actions had a discriminatory effect on a protected class, regardless of motivation. *Cmty. Svcs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005); *Doe v. City of Butler, Pa.*, 892 F.2d 315, 323 (3d Cir. 1989).  There is no allegation that Defendants' conduct in renting, servicing and/or maintaining the dwelling units at the Wyndhurst had a discriminatory effect on either African Americans or persons with physical disabilities, the bases for discrimination claimed by Mitchell, and thus the Court will not consider that theory of Fair Housing Act liability.  Rather, her claims appear to be premised on the theory that Defendants' various actions related to her use and enjoyment of housing at the Wyndhurst - namely, refusal to renew her lease agreement for a two-bedroom unit, insistence that she move to a unit adequate for her household size or vacate the premises, and disregard of her demands to repair or replace the carpet in her apartment - were motivated by intentional discrimination against African Americans and/or handicapped individuals.   *See Easthampton Ctr. LLC v. Twp. of Easthampton*, 155 F.Supp.2d 102, 111 (D.N.J. 2001) (holding that a plaintiff can establish a Fair Housing Act claim by showing that "discriminatory intent against a protected group was a motivating factor for the challenged action.").

Taking into account the kinds of evidence which might demonstrate discriminatory intent, the Court finds that the Amended Complaints are bereft of any facts which directly charge or even permit the reasonable inference that Defendants' challenged actions were motivated by either racial animus or an intent to deprive Mitchell of access and use of housing based on her

13

arthritis and diabetes.  Evidence of discriminatory intent may include, insofar as the considerations are relevant to this case, the impact of an action or decision, the historical background of a decision, the sequence of events leading up to the decision and departures from the normal substantive criteria.  *See id.* (citing *Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 142 n.22 (3d Cir. 1977); *Fowler v. Borough of Westville*, 97 F.Supp.2d 602, 612 (D.N.J. 2000) (citing *Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 266-67 (1977)).  At this stage of litigation, Plaintiff is not required of course to prove her claims, and the Court does not find the pleadings deficient for lack of evidence. The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1420(quoting *Scheuer*, 416 U.S. at 236); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (relying on *Twombly* to hold that to survive a motion to dismiss a Complaint must assert "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element").  Rather, the Fair Housing Act claims are not viable for lack of factual allegations indicating any discriminatory intent.  The Supreme Court's holdings in *Twombly* and *Iqbal* make clear that pleadings that merely parrot legal standards will not suffice to state a claim to relief.  Mitchell's Amended Complaints set forth no facts, which taken as true, could establish that Defendants acted with discriminatory intent.  She does not allege, for example, that she was treated differently from tenants who were not African American or not disabled, or that Defendants made remarks revealing a race-based animosity.  Nor does she make allegations demonstrating that Defendants had a history or pattern of asking one-person African-American households

14

receiving federal housing assistance to vacate a two-bedroom unit but relaxing or ignoring such occupancy rules for non-African Americans.   Instead, her accusations of illegal housing discrimination are based on suspicion, speculation and conclusory assertions.  Plaintiff's claims for relief under the Fair Housing Act will accordingly be dismissed pursuant to Rule 12(b)(6).

       7.    <u>Fraud</u>

Plaintiff asserts a claim of common law fraud against Defendant Piazza only. Under New Jersey law, a *prima facie* common law fraud claim requires: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997).  In federal court, fraud claims must comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *Federico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (holding that Rule 9(b) standard applies in evaluating whether common law fraud claim under New Jersey law is sufficiently pled).  Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."   *Federico*, 507 F.3d at 200.  Far short of meeting the Rule 9(b) standard, the Amended Complaint contains no facts alleging any misrepresentation made by Piazza to Plaintiff.  It is devoid of facts upon which a claim of fraud could be predicated.  The claim will be dismissed under Rule 12(b)(6).

8.     Violation of the Deceptive Trade Practices Act

Finally, Plaintiff attempts to bring a claim against Piazza under the Deceptive

Trade Practices Act.  As Piazza indicates, New Jersey has not adopted the Uniform Deceptive

Trade Practices Act.  It argues that Plaintiff may be trying to assert a claim under the Federal

Trade Commission Act, 42 U.S.C. § 45, but if so, the claim must necessarily fail because the

statute confers no private right of action.  *See Martino v. Everhome Mortg.*, 639 F.Supp.2d 484,

491 n.16 (D.N.J. 2009) (citing various circuit cases holding that no private right of action exists

under Federal Trade Commission Act); *see also* 42 U.S.C. § 45(a)(2) (conferring enforcement

power to Federal Trade Commission); 42 U.S.C. § 45(m)(1)(A) (authorizing FTC to initiate civil

action in federal court).  The Court agrees with Defendants' argument, and holds that if the claim

purports to arise under the Federal Trade Commission Act, it must be dismissed with prejudice.

In her opposition to the motion to dismiss, Plaintiff argues that her claim should not be

dismissed because it is viable under the "New Jersey Consumer Protection Act."   Defendants

first argue that the Court should not countenance Plaintiff's inappropriate attempt to amend her

pleadings by adding new causes of action in an opposition brief.  They are correct.  A litigant

may not amend her pleadings by adding facts or claims in a brief filed in opposition to a motion

to dismiss.  *Federico*, 507 F.3d at 202.  Nevertheless, because Plaintiff is *pro se* and her

pleadings must be construed liberally, the Court will for the sake of argument interpret her claim

that Piazza violated the "Deceptive Trade Practices Act" as an attempt to seek relief under the

New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*  Even reading the Amended Complaint

so broadly, the purported Consumer Fraud Act claim fails for the same reasons her common law

16

fraud claim fails: a lack of factual allegations on which the claim could be predicated.  "To state a claim under the NJCFA, a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff."  *Id.* (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17-23 (1994).  The Consumer Fraud Act defines unlawful practices as "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise."  N.J.S.A. § 56:8-2.  Moreover, facts supporting the elements of unlawful practice, ascertainable loss and causation must be pled with particularity, as a Consumer Fraud Act claim pursued in federal court is also subject to Rule 9(b).  *Dewey v. Volkswagon*, 558 F.Supp.2d 505, 524 (D.N.J.2008).  The Amended Complaint does not identify with requisite particularity what actionable misconduct Piazza engaged in, and moreover, that such misconduct resulted in the various losses Plaintiff complains of (such as the interruption of her academic program and loss of internet service she had installed in her unit), assuming they could be considered ascertainable.

Consistent with the foregoing discussion, whatever construction is afforded to the claim asserted in Count Eight of the Amended Complaint against Piazza, it must be dismissed under Rule 12(b)(6).

**III.    CONCLUSION**

Plaintiff's claims are not viable, and Defendant's motion to dismiss pursuant to Rule 12(b)(6) will be granted.  The Amended Complaints at issue in this consolidated action will be dismissed in their entirety.  The dismissal of Plaintiffs' claims against Defendants Marlene Walters, Neville Walters and Piazza will, moreover, be with prejudice.  The court need not dismiss without prejudice and with leave to amend if amendment would be inequitable or futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110 (3d Cir.2002).  The deficiencies identified in the Court's discussion above could not be cured by amendment, and thus dismissal with prejudice is appropriate.  In light of the dismissal of the entire action, Plaintiff's motion for summary judgment on her claims is rendered moot.  An appropriate form of Order will accompany this Opinion.

                                          ____s/ Stanley R. Chesler____
_____   STANLEY R. CHESLER
                                          United States District Judge
DATED: September 8, 2010

18